IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Joyce Proffitt, | : | |
| | : | Case No. C-1-03-471 |
| Plaintiff | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING |
| AK Steel Corp., | : | DEFENDANT'S MOTION FOR |
| | : | SUMMARY JUDGMENT |
| Defendant. | : | |

This matter comes before the Court on Defendant AK Steel Corporation's Motion for

Summary Judgment (doc. #21).  For the reasons that follow, the Court **GRANTS** AK Steel

Corporation ("AK Steel")'s motion (doc. #21).

I.      **BACKGROUND**[1]

Defendant AK Steel runs a steel plant located in Middletown, Ohio.  Plaintiff Joyce

Proffitt ("Proffitt") worked at AK Steel in various positions for 24 years, from June 22, 1977,

until her discharge on July 19, 2001.  Proffitt was a member of the Armco Employees

Independent Federation, Inc. ("the Union"), which represents AK Steel's hourly employees.

(Proffitt dep. at 12.)  As a member of the Union, Proffitt's employment was governed by a

collective bargaining agreement ("CBA").  (Id. at 12-13.)

---

[1]The background facts are taken from Proffitt's deposition testimony, unless otherwise
noted.

1

At the time of her discharge, Proffitt was employed as a Utility Person in the Aluminized Department.  (Id. at 95-96.)  As a Utility Person, Proffitt's job was, in part, to operate controls to manuever newly finished steel coils between a winding reel and onto a banding platform.  (Id. at 97-98.)  When a coil came off of the winding reel, it was deposited onto a coil car that ran on a track to the banding platform.  The banding platform was raised above the level where the coil exited from the winding reel.  Thus, the controls which Proffitt operated to move the coil and coil car included 1) a button that moved the coil horizontally through space, to move the coil from the winding reel to the bottom of the face of the banding platform, and 2) a button that moved the coil vertically through space, to raise the coil up the face of the banding platform to the top of the platform.

On July 18, 2001, the day of the accident, Proffitt reported to work around 6:15 a.m., and took up her post in the pit around 6:35 a.m.  Some time later that morning, Proffitt was moving an approximately 30,000-pound steel coil from the winding reel to the banding platform.  Proffitt testified that as she was moving the coil, she became "mesmerized" by another machine nearby. As a consequence, Proffitt held the button that moved the coil horizontally through space for too long, causing the coil to hit the face of the banding platform and fall off the coil car.  The accident caused a two-hour delay in production and damage both to the coil and to other equipment.  Proffitt admitted both the day of the accident and at her deposition that her inattentiveness was the sole cause of the accident.  (Id. at 103-04.)

At the time of the accident, AK Steel maintained a "zero tolerance" Substance Abuse Policy (the "Policy").  (See doc. #21., Ex. A, part 2.)  That policy provided that AK Steel would not "tolerate employees entering the plant under the influence of alcohol, illicit or controlled

2

substances," because it was "Unsafe and Improper Behavior."  (Id. at Ex. 1, p. 182).  The policy

further provided that "[f]ailure to comply with the policy on alcohol and substance abuse will

result in automatic disciplinary suspension subject to discharge.  Refusal to submit to testing at

[AK Steel's] request will be treated for disciplinary purposes *in the same manner as a positive*

*test result*."  (Id. (emphasis added)).  The Policy provides several instances in which AK Steel

reserves the right to require testing, including in the event of an on-the-job accident "where there

is reasonable suspicion to believe drug or alcohol use may be involved."  (Id. at Ex. 1, p. 182-

83.)    After the coil fell, the Step-up Foreman, Harold Holly, came to investigate the accident

and spoke with Proffitt.  Holly then spoke with the Aluminized Department Manager, Phil Fultz,

about the accident.  Fultz began investigating the incident by going to the scene of the accident,

observing the scene from Proffitt's point of view to see how the accident occurred, and speaking

with Proffitt.  Proffitt told Fultz that she caused the accident.  Although Fultz did not observe

anything about Proffitt's demeanor that caused him to think she was intoxicated, he decided to

send Proffitt for drug testing to eliminate the possibility.

Proffitt went to the AK Steel Medical Center ("Medical Center") for drug testing.  She

arrived at the center after noon and at 12:40 p.m., signed a document that provided notice that

providing a urine specimen was mandatory and that failing to provide a specimen would be

treated as a positive test result.  Next Proffitt spoke with her union representative, who had come

to the Medical Center.  Then, at approximately 2:30 p.m., Proffitt went to the restroom with

Johnson Controls Security Guard Emma Metcalf.  Ms. Metcalf stood in the restroom while

Proffitt tried to give a urine sample.  Proffitt claims she urinated into the sample cup, but

accidentally dropped the cup into the toilet.  Proffitt did not provide a sample from her first trip

3

to the restroom.  Despite remaining at the Medical Center for two more hours, and drinking several cups of water during that time, Proffitt claimed that she could not urinate again.

At some point during her stay at the Medical Center, Proffitt called her husband on her cell phone and told him what was happening.  She testified that she was worried about her husband's health because he had diabetes and heart problems, and his voice was quivering on the phone.  After returning to the restroom two more times without providing a sample, and waiting in the lobby of the Medical Center for several hours, Proffitt told the nurse on duty that she was going to go home.  The Medical Center was open 24 hours, so Proffitt could have stayed to try to provide a sample.  At about 6 p.m., Proffitt left the Medical Center.  She testified that she left because she was concerned about her husband's health.  The next morning, Proffitt went to an independent drug testing facility and was drug tested.  Her test showed no presence of drugs.

Proffitt admitted at her deposition that she was told several times – both by a nurse at the Medical Center and by a Union representative – that her failure to submit a urine sample at the Medical Center that day would be considered the same as a positive test and would require her dismissal.  She also testified that she understood that to be true when she left the Medical Center.

On July 19, 2001, AK Steel discharged Proffitt for violation of the Policy.  Proffitt filed a grievance to challenge her discharge.  Pursuant to the CBA, Proffitt's grievance was submitted to binding arbitration.  On September 17, 2001, a neutral arbitrator conducted an evidentiary hearing regarding Proffitt's grievance.  Following the arbitration, the arbitrator held that AK Steel had reasonable suspicion to require Proffitt to submit to a drug test and that Proffitt's failure to submit to that test gave AK Steel just cause to discharge her for violation of AK Steel's Substance Abuse Policy.  (See doc. #21, Ex. A, part 3, p. 22-24.)

4

On July 1, 2003, Proffitt filed her complaint, making claims of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626 *et seq*., and Ohio Revised Code ("O.R.C.") § 4112 *et seq*.; sex discrimination in violation of Title VII, 42 U.S.C. §2000e; violation of Ohio tort law; and violation of her procedural due process rights under 42 U.S.C. § 1983 (doc. #1).  On December 15, 2003, pursuant to the parties' agreement, this Court issued an Agreed Order (doc. #16) dismissing Proffitt's claims under 42 U.S.C. § 1983 and 29 U.S.C. § 626, as well as her Ohio tort claim, and thus limiting Plaintiff's claims to a federal sex discrimination claim under Title VII and a state age discrimination claim under O.R.C. § 4112.14.  On October 27, 2004, AK Steel moved for summary judgment on Proffitt's remaining claims.

## II.    JURISDICTION AND LEGAL STANDARD

This Court has federal question jurisdiction under 28 U.S.C. §1331 over Reynolds' Title VII claim, and supplemental jurisdiction under 28 U.S.C. § 1367 over Reynolds' state law claim. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that permissibly can be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The nonmoving party "must set forth specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 249 (1986).  A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  Id. at 252.  "It is now quite well-established that, in order to withstand a motion for summary judgment, the party opposing the motion must present 'affirmative evidence' to support his/her position; a mere 'scintilla of evidence' is insufficient." Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992).

## III.    ANALYSIS

Proffitt argues that AK Steel's decisions 1) requiring her to submit to a drug test, and 2) dismissing her for refusing the drug test, evidenced disparate treatment motivated by sex and age discrimination.

### A.    Sex Discrimination Claims

Proffitt has no direct evidence of sex discrimination, so she must prove her case through circumstantial evidence.  In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), the Supreme Court laid out the burden shifting analysis for private claims alleging employment discrimination.  To prove discrimination by circumstantial evidence, Profitt must first establish a prima facie case.  See id. at 802.

Proffitt cited both 42 U.S.C. §§2000e-2(a) and 2000e-3(a) in her complaint (see doc. #1, ¶7.).  The sections provide for different causes of action.  In her Memorandum Contra to Defendant AK Steel Corp.'s Motion for Summary Judgment, however, Proffitt conflates the standards for proving a prima facie claim under each section.  AK Steel also conflates the standards applicable to the two sections in its Motion for Summary Judgment.  (See doc. #21 at 9.)  The elements of a prima facie case under Section 2000e-2(a) and Section 2000e-3, however, are distinct and may not be so conflated.

Section 2000e-2(a) provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's" sex, or "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's" sex.  To make out a prima facie case for disparate treatment under Section 2000e-2a, Proffitt must prove that:  (1) she was a member of a protected class, (2) she was subject to an adverse employment action, (3) she was qualified for the position, and (4) she was treated differently from similarly situated, non-protected individuals for the same conduct.  See Humenny v. Genex Corp., 390 F.3d 901, 906 (6th Cir. 2004).

Section 2000e-3(a), by contrast, provides that it is unlawful for an employer to *retaliate* against an employee for opposing "any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  To make out a prima facie case of retaliation under § 2000e-3(a), Proffitt must demonstrate that:  (1) she was engaged in an activity protected by Title VII; (2) the exercise of her civil rights was known by AK Steel; (3) thereafter, AK Steel took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action."  See Hollins, 188 F.3d 652, 661 (6th Cir. 1999).

The Court must thus analyze Proffitt's claims separately under each code section.  Before doing so, however, the Court must unwind another conflation:  in Proffitt's Memorandum

7

Contra, she occasionally conflates two of AK Steel's actions – AK Steel's order that she submit to a drug test for dropping a coil and AK Steel's discharge of her for refusing the drug test.  (See doc. #25 at 7.)  For instance, Proffitt submits that there are some male AK Steel employees who previously dropped a coil and yet were not discharged.  However, in framing the issue this way, she ignores the fact that she was not discharged for dropping a coil, but rather for refusing to take a drug test.  Thus, though Proffitt's dropping a coil and refusing the drug test are consequentially linked, they are separate events with separate consequences providing for separate claims, and cannot be conflated for legal analysis.[2]  Since Proffitt does not specify in her complaint which of these actions she believes violates which section of Title VII, (see doc. #1, ¶¶ 24-28), the Court will address each challenged action separately under each section.

### 1.    Section 2000-2(a):  Disparate Treatment Claims

#### a.    Drug Testing

##### i)    Prima Facie Case

Again, to make out a prima facie case for disparate treatment, Proffitt must prove that: (1) she was a member of a protected class, (2) she was subject to an adverse employment action, (3) she was qualified for the position, and (4) she was treated differently from similarly situated, non-protected individuals.  See Humenny v. Genex Corp., 390 F.3d at 906.  Profitt alleges that AK Steel subjected her to disparate treatment by ordering her to take a drug test for dropping a coil when it had not ordered male employees who dropped a coil to submit to drug testing.  AK Steel argues that Proffitt has not made out a prima facie case of disparate treatment because 1)

---

[2]Proffitt states each action in a separate paragraph of her complaint.  (See doc. #1, ¶24 (citing wrongful termination), and ¶28 (citing drug testing).

Proffitt's being required to take a drug test did not qualify as an adverse employment action; and 2) she has produced no evidence that she was treated differently from similarly situated, non-protected employees.

Requiring an employee to submit to a drug test can qualify as an adverse employment action "where a drug test is not performed in a routine fashion following the regular and legitimate practices of the employer, but is conducted in a manner that harasses or humiliates [the] employee[]."  See Stockett v. Muncie Indiana Transit System, 221 F.3d 997, 1001-1002 (7th Cir. 2000).  In this case, however, Proffitt has not shown that AK Steel's requiring her to submit to a drug test was the kind of harassing act that constitutes an adverse employment action.  AK Steel required Proffitt to take a drug test pursuant to company Policy, and only after she caused a serious accident for which she accepted full responsibility, and which she explained only by saying that she "los[t] her attention span."  (See Proffitt dep. at 105.)  AK Steel's "reasonable and legitimate request made pursuant to [its] published Drug Policy does not constitute the type of adverse employment action that Title VII is designed to prevent."  Stockett, 221 F.3d at 1002; see also Young v. Chicago Transit System, 189 F. Supp. 2d 780, 789 n. 12 (N.D. Ill. 2002) (plaintiff not subject to adverse employment action in being required to submit to drug testing pursuant to established drug policy).

Proffitt has also failed to show that there were similarly situated, non-protected employees that were treated differently.  The Sixth Circuit has held that "[i]t is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly-situated *in all respects*."  Mitchell, 964 F.2d at 583 (citing Stotts v. Memphis Fire Dept., 858 F.2d 289 (6th Cir. 1988)) (emphasis in

original).  In cases like this one involving claims of alleged disparate application of disciplinary procedures, "to be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." See id. at 583 and Ercegovich v. Goodyear, 154 F.3d 344, 352 (6th Cir. 1988); see also Brantley v. Runyon, No. 98-3264, 1999 WL 195658, at **4 (6th Cir. Mar. 8, 1999).

Proffitt offers a list of men whom she alleges "dropped coils in the pit before [sic] exactly the same circumstances that I did and nothing happened to them."  (See Proffitt dep. at 154.) She named a few men, but admitted that she didn't know the names of all such men, that she wasn't there when any of the men she named dropped the coils, that she was not involved in the investigation of the accidents, and that she didn't know who supervised any of the men who allegedly also dropped coils without being sent for a drug test.  (Id. at 83-90, 154-61, 191-93.) Instead, she admitted both in her deposition and her affidavit, that she had no personal knowledge of the named men dropping coils, but had only heard from others that they had.  (Id. at 87-88, 157-59, 191-93; see also Proffitt aff. ¶ 29.)

Proffitt also submits that there were males who caused what she considered to be similarly serious accidents, such as "the line being unstrung"[3] who were also not sent out for a drug test.  (Id. at 84-85.)  Again, however, she testified that she was not present, and that she

_____

[3]Proffitt described the "line being unstrung," as when someone "lost a tail and it unflung, unstrung the tower."  (Proffitt dep at 84.)  It is unclear fron her testimony, and Proffitt did not explain in her briefing, what this means, or how serious of an accident it is in comparison to dropping a coil.

could not remember any specifics about the alleged incidents, including who caused the accidents, when they occurred, or who was supervising the employees who caused the accidents. (Id. at 85-86.)

Proffitt offers no admissible evidence in support of the former allegations regarding the men she named or mentioned. Instead, in both her deposition testimony and her affidavit, she offers only hearsay that such events had occurred. The Sixth Circuit has held that such hearsay allegations are not admissible in affidavit form when considering a motion for summary judgment, and that even if they were, such allegations are insufficient evidence of discrimination as a matter of law. See Mitchell, 964 F.2d at 584-85.

In Mitchell, the Sixth Circuit considered the plaintiff's appeal of a district court's refusal to consider her affidavit in deciding the defendant's motion for summary judgment. The Sixth Circuit agreed with the district court that the affidavit was not "a proper Rule 56(e) affidavit because it was not made on personal knowledge and did not set forth 'facts' that would be admissible into evidence." Id. at 584. The Court held that even if the district court had considered the affidavit, "the statements contained therein are nothing more than rumors, conclusory allegations and subjective beliefs which are wholly insufficient evidence to establish a claim of discrimination as a matter of law." Id. at 584-85. The allegations described above are just that – allegations that are not based on personal knowledge and are therefore insufficient to establish discrimination as a matter of law. Id.

Proffitt also testified that she had personally observed accidents where the man who caused the accident had not been sent for a drug test. First, she testified that she herself had seen at least four or five people drop coils in the pit over the seven or eight years she spent in the

department, but she could not remember by whom, when, or why those coils were dropped, or who was supervising the employees who dropped those coils.  (See Proffitt dep. at 37-38.)  Later in her deposition, she testified that there was one time early in her tenure that she saw someone drop a coil, but she did not remember who did so or when it happened.  (Id. at 160-61.)  Proffitt also admitted that this incident occurred before Phil Fultz was a supervisor of the department.  (Id.)

Plaintiff's allegations of other similarly situated employees being treated better are insufficient evidence as a matter of law.  Here, Plaintiff admitted that she had no knowledge of who supervised the employees whom she cited as being similarly situated but differently treated.  Moreover, she presented no facts whatsoever regarding the nature of the accidents she allegedly saw – no who, what, when, why, or how – and therefore no evidence that those men were similarly situated to her.  Such potentially distinguishing details are especially important given the policy here, by which a supervisor must decide whether there is reasonable suspicion to require drug testing from the circumstances of an accident.

Finally, Plaintiff offers the affidavit of Harold Holly, who was serving as the Step-Up Foreman the day of Proffitt's accident.  Holly is a union employee at AK Steel, not a member of the management.  Holly attested that a few months after Proffitt's incident, while Holly was again acting as Step-Up Foreman, another AK Steel employee, Mark Roberts, dropped a coil in the same manner as Proffitt did, but was not sent for drug testing.  (See Holly aff. at 2.)  Proffitt testified that Roberts was the only person she knows who dropped a coil and who was also supervised by Fultz.  (Proffitt dep. at 83-84.)  According to Holly and Fultz, however, Fultz was not supervising Roberts when Roberts dropped the coil.  (Holly aff. at 3; Fultz dec. ¶¶3,4)

12

Moreover, Fultz has attested, and it is undisputed, that neither he nor any other management officials were even present at the time of Roberts' accident.  It is undisputed that Fultz was not even at the plant when Roberts dropped a coil, (Fultz dec. ¶¶3-5) and Holly did not tell Fultz of the accident until the next day, (<u>see</u> Holly aff. at 3), so Fultz did not have the opportunity to make a decision regarding the appropriate response to the accident until the day after the accident, when Roberts was no longer even at work.  (Fultz dec. ¶ 5,7.)  By the next day, given the time for any possible drugs or alcohol to wear off, and when Roberts was no longer at work to be observed or questioned, the question of whether there was reasonable suspicion for a drug test would have changed substantially from the time of the accident.  As Fultz was not supervising Roberts at the relevant time, and was not able to observe Roberts immediately following the accident or investigate the accident immediately after it happened, the circumstances surrounding Roberts' accident were not comparable to those surrounding Proffitt's accident.  Roberts was not similarly situated to Proffitt.

Holly also attested that he has personal knowledge of several men who have dropped a coil and who were not sent out for drug testing.  (<u>Id</u>. at 2.)  Holly, unlike Proffitt, claimed to have personal knowledge of such men, but he still did not offer their names, their supervisors, when the accidents occurred, why they occurred, or any evidence whatsoever regarding the alleged accidents to show that the unnamed men that caused the accidents were in fact similarly situated to Proffitt.  His attestation is thus also insufficient evidence to show that these unnamed men were similarly situated to Proffitt.  <u>Mitchell</u>, 964 F.2d at 583.

Plaintiff has thus failed to make out a prima facie case of disparate treatment in being required to submit to a drug test.  <u>See</u> <u>Trotter v. City of Clarksville</u>, No. 0-3-5612, 2004 WL

627053, at **2 (6th Cir. 2004) (affirming summary judgment for defendant on plaintiff's disparate treatment in drug testing claim where test ordered pursuant to established policy and no evidence of similarly situated employees). Summary judgment must thus be **GRANTED** to AK Steel on this claim. See id.

### ii) Pretext

Even assuming Proffitt had made out a prima facie case of disparate treatment for being required to submit to a drug test, summary judgment should be granted to AK Steel on this claim because Proffitt has not put forth sufficient evidence for a reasonable jury to conclude that AK Steel's explanation for its decision was pretext for discrimination. For the sake of completeness the Court will assume *arguendo* that Proffitt has made out a prima facie case and examine pretext. As such, the burden of production returns to AK Steel to articulate a legitimate, nondiscriminatory reason for its action. See McDonnell Douglas, 411 U.S. at 802-03. AK Steel has put forward a legitimate, nondiscriminatory reason for its employment action: company policy required Proffitt to submit to a drug test where, as here, there was an accident and a reasonable suspicion of drug or alcohol use. (See doc. #21, Ex. 3, at p.182.) Given that showing, the burden returns to Proffitt to show that AK Steel's articulated reason is merely a pretext for illegal discrimination. Id. at 804.[4]

To prove that AK Steel's explanation is mere pretext, Proffitt "is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate her discharge, or (3) that they were *insufficient* to

---

[4]Thus, although the burden of production shifts in this analysis, the burden of persuasion remains with Proffitt at all times. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993).

motivate discharge."  See Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th

Cir. 1994) (citations and internal quotations omitted).

      The first method of showing pretext requires "evidence that the proffered bases for the

plaintiff's discharge never happened, *i.e.*, that they are 'factually false.'" Id. (citation omitted).

AK Steel submits that Plaintiff was sent for a drug test pursuant to the Policy.  Plaintiff does not

dispute that AK Steel maintained a policy regarding substance use and drug testing to which she

was subject.  (Id. at 41-45.)  Plaintiff has also admitted that she dropped a coil, that dropping the

coil was entirely her fault, and that she was ordered to take a drug test.  (Proffitt dep. at 103-04,

106.

      Proffitt also appears to attack AK Steel's explanation as factually false by arguing that

Fultz did not have reasonable suspicion to order Proffitt to take a drug test.[5]  Proffitt's argument

is faulty.  Proffitt argues that Fultz did not have reasonable suspicion to send her for a drug test

because he admitted that he saw no outward signs that Proffitt was under the influence.  (See

doc. #25 at 9, 17.)  Under AK Steel's Policy, however, observable signs of intoxication are not

required for a finding of reasonable suspicion to order a drug test.  (See doc. #21, Ex.A2, at 183

and Ex. B, Brickey dec. ¶5.)  Given the serious nature of the accident and Proffitt's acceptance

of responsibility without any explanation besides "losing her attention span," (see Proffitt dep. at

---

     [5]The cases to which Proffitt cites are inapposite.  In Best et al. v. Dept. of Health and
Human Servs., No. COA01-118, 2002 N.C. App. LEXIS 396 (N.C. App. May 7, 2002), the court
considered an appeal of a trial court's decision reviewing the validity of the State Personnel
Commission's decision to dismiss state employees from their jobs for refusing a drug test.
Similarly, in Equitable Gas Co. V. United Steelworkers of Am., No. 87-0940, 1987 U.S. Dist.
LEXIS 12135 (W.D. Pa. Dec. 30, 1987), the court considered an appeal of an arbitrator's
decision regarding an employer's dismissal of an employee for refusing a drug test.  Neither Best
nor Equitable Gas was a discrimination case.

105), Fultz's conclusion that he had reasonable suspicion to send her for drug testing appears on its face to be sound. AK Steel's request that Proffitt submit to a drug test was entirely consistent with its Policy, which gives a supervisor discretion to order a drug test following an accident where there is reasonable suspicion to believe drug or alcohol use may be involved. Proffitt has thus failed to show that AK Steel's reason for requiring her to take a drug test was factually false.

To show pretext by the second method, a plaintiff "admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal." See Manzer, 29 F.3d at 1084. Thus, to show pretext, Proffitt must show that "the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup." See Manzer, 29 F.3d at 1084. In the Sixth Circuit, "in order to make this type of rebuttal showing, the plaintiff may not rely simply upon his prima facie evidence but must, instead, introduce additional evidence of [] discrimination." Id.

As evidence of pretext, Proffitt again points to AK Steel's allegedly disparate treatment of Mark Roberts. However, because she already used this evidence to attempt to show her prima facie case, (see doc. #25 at14-15), she must produce additional evidence of discrimination to establish pretext.[6] Proffitt also submits, and Holly has attested, that Fultz did not stop to speak with Proffitt as he did with the men in the department. (Proffitt dep. at 35; Holly aff. at 3.) But Proffitt also admitted that Fultz had never said anything to her that suggested that he was

---

[6]Regardless, the Court held, above, that Proffitt did not provide sufficient evidence regarding the accident Roberts caused to show that Roberts was similarly situated.

16

discriminating against her or women in general, and that she had never seen anything in writing from Fultz or any other AK Steel employee that was evidence of discrimination.  (Id. at 151-52.) Given the absence of additional evidence of discrimination, Proffitt has also failed to show pretext by this method.

To show pretext by the third method, Proffitt must provide "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff."  See Manzer, 29 F.3d at 1084.  Thus, Proffitt would have to provide evidence that other employees, especially male employees, were not ordered to take a drug test despite dropping a coil in substantially the same circumstances as Proffitt.  As discussed above, Plaintiff has offered only vague, conclusory allegations of the existence of comparable non-protected employees who were treated better, and so has also failed to offer sufficient evidence of pretext by the final method.  Proffitt has thus failed to prove pretext by any of the Manzer methods.

### b.　　Discharge

#### i)　　Prima Facie Case

Proffitt next alleges that AK Steel violated Section 2000e-2(a) by discharging her on the basis of her sex.  To make out a prima facie case of disparate treatment under Section 2000e-2(a), Proffitt must prove that:  (1) she was a member of a protected class, (2) she was discharged, (3) she was qualified for the position, and (4) she was treated differently from similarly situated, non-protected individuals.  See Humenny v. Genex Corp., 390 F.3d at 906.

Proffitt has shown the first three elements of a prima facie case because she has offered

evidence that she is a woman who was discharged despite being qualified.[7]  To prove the fourth

element, Proffitt "must produce evidence which at a minimum establishes (1) that [s]he was a

member of a protected class and (2) that for the same or similar conduct [s]he was treated

differently than similarly situated non-minority employees."  Mitchell, 964 F.2d at 583.

Proffitt argues that she was treated less favorably than other similarly situated, non-

protected employees who also refused to take a drug test.  Proffitt has failed, however, to

produce evidence of any similarly situated employees.  Proffitt has submitted no evidence of any

AK Steel employee, male or female, who was not fired for refusing to take a drug test.  In fact,

she testified at her deposition that she knew of no AK Steel employee who was not fired for

refusing to take a drug test.  (See Proffitt dep. at 45.) Furthermore, she testified that she knew

that AK Steel "uniformly applied" the Policy "such that anyone who refused to submit to a drug

and alcohol test was discharged."  (Id.)  Plaintiff has clearly not met her burden at this point of

providing affirmative evidence demonstrating a genuine issue of material fact for the jury.  See

Mitchell, 964 F.2d at 584.  Consequently, Plaintiff has failed to prove the last required element

of a prima facie case.

### ii)  Pretext

Again, even assuming Proffitt had made out a prima facie case of disparate treatment –

which she has not – summary judgment should be granted to AK Steel because Proffitt has not

put forth sufficient evidence for a reasonable jury to conclude that AK Steel's explanation for its

decision was pretext for discrimination.  For the sake of completeness the Court will again

---

[7]Proffitt had been employed by AK Steel for twenty-four years and had spent the last four years as a utility person, the position she held at her discharge.  AK Steel has not challenged Proffitt's qualifications for her position.

assume *arguendo* that Proffitt has made out a prima facie case and examine pretext.  As such, the burden of production returns to AK Steel to articulate a legitimate, nondiscriminatory reason for its action.  See McDonnell Douglas, 411 U.S. at 802-03.  AK Steel has put forward a legitimate, nondiscriminatory reason for its employment action:  company policy provided that Proffitt's refusal to submit to the drug test required her dismissal under the policy.  (See doc. #21, Ex. 3, at p.182.)  Given that showing, the burden returns to Proffitt to show that AK Steel's articulated reason is merely a pretext for illegal discrimination.  Id. at 804.[8]

Again, to prove that AK Steel's explanation is mere pretext, Proffitt "is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate her discharge, or (3) that they were *insufficient* to motivate discharge."  See Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994) (citations and internal quotations omitted).

To show pretext by the first method, Proffitt must present "evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.*, that they are 'factually false.'" Id. (citation omitted).  AK Steel submits that Plaintiff was discharged for failing to submit to a drug test, which required her discharge under the policy.  (Doc. #21, at 1.)  Proffitt does not dispute that AK Steel maintained a policy regarding substance use and drug testing to which she was subject, and which provides that a refusal to take a drug test when requested is equated to a positive test, and results in discharge.  (Id. at 41-45.)  Plaintiff has admitted that she was ordered to take a drug test.  (Proffitt dep. at 103-04, 106.)  Proffitt has also admitted that she was advised

---

[8]Thus, although the burden of production shifts in this analysis, the burden of persuasion remains with Proffitt at all times.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993).

that if she left the testing facility without providing a urine sample, it would be considered the same as a positive result and would cause her discharge.  (Id. at 133-39.)  While Proffitt argues that she did not refuse to submit to the test, but rather was unable to do so, there is no dispute that she did not provide a urine sample on the day of the accident.  (Id. at 48.)  Plaintiff has thus failed to prove that AK Steel's reason for discharging her is factually false, and so fails to prove pretext by this method.

To show pretext by the second method, Proffitt must show that "the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup."  See Manzer, 29 F.3d at 1084.  In the Sixth Circuit, "in order to make this type of rebuttal showing, the plaintiff may not rely simply upon his prima facie evidence but must, instead, introduce additional evidence of [] discrimination."  Id.  As evidence of pretext, as discussed above, Proffitt submits, and Holly has attested, that Fultz did not stop to speak with Proffitt as he did with the men in the department.  (Proffitt dep. at 35; Holly aff. at 3.)  But again, Proffitt also admitted that Fultz had never said anything to her that suggested that he was discriminating against her or women in general, and that she had never seen anything in writing from Fultz or any other AK Steel employee that was evidence of discrimination.  (Id. at 151-52.)  Given the absence of additional evidence of discrimination, Proffitt has also failed to show pretext by this method.

To show pretext by the third method, Proffitt would have to provide evidence that other employees, especially male employees, were not fired despite refusing a company-ordered drug test.  See Manzer, 29 F.3d at 1084.  As discussed above, Proffitt has submitted no such evidence; she admitted that she does not personally know of anyone who refused a drug test and was not

20

fired.  (Proffitt dep. at 46.)  Proffitt argues that the Court should consider the fact that one man, Wayne Martin, was fired for refusing the test, but then, unlike Proffitt, got his job back.  (Id. at 46-47.)  Again, however, Proffitt has submitted no evidence substantiating her allegations. Moreover, AK Steel has submitted undisputed evidence that Martin was discharged for refusing to take a drug test, and was reinstated only by order of an independent arbitrator.[9]  (See doc. #21, Ex. B., Brickey Dec. at ¶¶11-12.)  As such, he is not an example of an unprotected comparable person who was not fired for similar conduct – indeed he was fired.  Proffitt has again failed to prove pretext by any of the Manzer methods.

Even taking Profitts' allegations as true, the Court finds that Proffitt has not met her burden of providing sufficient evidence from which a reasonable jury could either find she made out a prima facie case or conclude it is more likely than not that AK Steel's proffered reason for Proffitt's discharge is merely pretext for discrimination.  Summary judgment is therefore **GRANTED** to AK Steel on Proffitt's section 2000e-2(a) claim as to both the drug testing and discharge theories.

### 2.    Section 2000-3(a): Retaliation

Though Proffitt mentioned Section 2000-3(a) in her complaint, she neither discussed nor mentioned a claim under that section in her Response to AK Steel's motion for summary judgment, and as noted above, AK Steel did not distinguish the separate causes of action, either. The Court might assume that Plaintiff had abandoned or never intended to make a claim under Section 2000e-3(a) at all, but will nevertheless address that claim on the merits.

---

[9]It bears noting that Proffitt also had and took the opportunity to arbitrate her discharge. (Proffitt dep. at 19-21.)  The arbitrator upheld her discharge.  (See Doc. #21, Ex.A3.)

Again Title VII, section 2003-3(a) provides that it is unlawful for an employer to retaliate against an employee for opposing "any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  The prima facie case of retaliation under § 2000e-3(a) requires Proffitt to demonstrate: (1) that she was engaged in an activity protected by Title VII; (2) that the exercise of her civil rights was known by AK Steel; (3) that, thereafter, AK Steel took an employment action adverse to her; and (4) that there was a causal connection between the protected activity and the adverse employment action."  See Hollins, 188 F.3d 652, 661 (6th Cir. 1999).

Profitt alleges that AK Steel discriminated against her by ordering her to take a drug test for dropping a coil when it had not ordered male employees who dropped a coil to submit to drug testing, and for discharging her for failing to submit to the test.  Neither of these allegations state a claim for retaliation under § 2000e-3(a) because neither includes the first, second, or fourth elements required to state a claim.  Specifically, Proffitt has not alleged that she was engaged in an activity protected by Title VII and as explained above, that the exercise of her civil rights was known by AK Steel, or that there was a causal connection between any such protected activity and an adverse employment action.  Summary judgment thus must be **GRANTED** to AK Steel on Proffitt's claim under section 2000e-3(a).

The Court concludes that, even when the evidence is taken in the light most favorable to Proffitt, Proffitt has failed to provide sufficient evidence for a reasonable jury to find for Proffitt on any of her sex discrimination claims.  The Court thus **GRANTS** summary judgment to AK Steel on Profitts' Title VII claims.

22

### B.    Age Discrimination under O.R.C. § 4112

Proffitt also brings a claim under O.R.C. §4112.14.  AK Steel argues that Proffitt's claim under section 4112.14 is barred because she had the opportunity to arbitrate her discharge. Section 4112.14(C) provides that a cause of action under section 4112.14 "shall not be available in the case of discharges where the employee has available to the employee the opportunity to arbitrate the discharge or where a discharge has been arbitrated and has been found to be for just cause."  Proffitt argues that section 4112.14(C) nevertheless does not bar her age discrimination claim because it "was not sufficiently made a part of the claims presented at her arbitration" and "was not specifically arbitrated."  (Doc. #25 at 18.)  Proffitt not only had the opportunity to arbitrate all her claims, and in fact did arbitrate her claims, but also the arbitrator upheld her discharge as for just cause, so there are three separate reasons under Section 4112.14(C) why her claim is barred.  (See Proffitt dep. at 19-21.)  The only exception to section 4112.14(C) is "when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation.  In such an instance, an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." Sutterlin v. Mansfield Plumbing, No. 00COA01369, 2001 WL 310633, at *1 (Ohio Ct. App. Mar. 26, 2001).  As Plaintiff's complaint did not allege a breach of duty by the Union,  and under the plain terms of section 4112.14(C), Proffitt may not maintain a claim for age discrimination under section 4112.14.  See O.R.C. § 4112.14(C); see also Sutterlin, 2001 WL 310633, at *1-*2. Summary judgment is thus **GRANTED** on Reynolds' state age discrimination claim.

**IV.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS** AK Steel's Motion for Summary

Judgment (doc. #21).

IT IS SO ORDERED.

_____s/Susan J. Dlott_____

Susan J. Dlott
United States District Judge